IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WORLD TRADE CENTERS ASSOCIATION, INC., A Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: _____ |
| WORLD TRADE ILLINOIS  and WILLIAM J. LADA, | ) ) ) | JURY DEMAND |
| Defendants. | ) ) | |

## **COMPLAINT**

Plaintiff World Trade Centers Association, Inc. ("WTCA" or "Plaintiff"), as and for its Complaint against Defendants World Trade Illinois ("WTI") and William J. Lada (collectively, "Defendants"), hereby asserts as follows.

## INTRODUCTION

1. Founded in 1969, WTCA is a not-for-profit membership association dedicated to the establishment and effective cooperation of more than 300 members worldwide. These members are licensed by WTCA to operate "World Trade Center" branded facilities to promote international business and trade.

2. WTCA is the owner of the trademarks WORLD TRADE CENTER®, WTC® and a Map Design Logo (collectively, the "WTCA Marks"), and WTCA has registered the WTCA Marks with the United States Patent and Trademark Office ("USPTO"). In addition to its federally protected rights in the WTCA Marks, WTCA also enjoys rights in the WTCA Marks under common law.

3. The widespread use of the WTCA Marks as trademarks by WTCA and its licensed members, coupled with the significant revenue generated in connection with the WTCA Marks, the advertising expenditures related to the WTCA Marks, the promotional materials bearing the WTCA Marks, the exposure of the WTCA Marks in popular media, the awards and recognitions that have been received in connection with WTCA's association services, and the protection and enforcement efforts undertaken by WTCA in connection with the WTCA Marks, clearly establish WTCA's rights in the WTCA Marks.

4. In addition to the licensed use of the WTCA Marks, authorized members of the WTCA have access to the hundreds of World Trade Center facilities established in more than 90 countries around the world, as well as the business members of the individual World Trade Center organizations. Benefits include trade missions, business leads and reciprocal preferential treatment at other World Trade Center locations. Clearly, the value of WTCA membership exceeds the current initiation fee of $200,000 and annual dues of $10,000 that members are supposed to pay. Membership has steadily increased since WTCA was established, and many members report such benefits as premium rental values for their buildings as well as a positive economic impact on the local community.

5. The substantial goodwill associated with the WTCA Marks has occasionally led to attempted unauthorized uses of those Marks. Some third parties, who are not members of WTCA, have attempted to appropriate the WTCA Marks to pass their organizations off as legitimate World Trade Center facilities. This misleads local business communities as well as legitimate WTCA members, and is extremely damaging to WTCA, its members and its trademarks.

6. Defendants are unauthorized users as described above and have appropriated the WTCA Marks in an attempt to pass off their organization, located in the greater Chicago area, as a legitimate WTCA member. This is misleading and causing confusion among Chicago's business community, as well as WTCA's network of members. WTCA has brought this action to put an end to Defendants' wrongful conduct that has caused and is likely to cause confusion among members of the relevant trade and public, and otherwise violated WTCA's long-established trademark rights.

## THE PARTIES

7. Plaintiff WTCA is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business at 120 Broadway, Suite 3350, New York, New York 10271.

8. Upon information and belief, Defendant WTI does business in Illinois and is located at The Oak Brook Hotel, 2301 York Road, Oak Brook, Illinois 60523 and maintains a website at http://wtcil.org, a web presence at http://wtcmsra.org/, and a social media presence on Twitter through the Twitter handle "wtcil."

9. Upon information and belief, Defendant William B. Lada resides in the State of Illinois and is the President of WTI. Upon information and belief, there is no practical or legal distinction between Lada and WTI, such that WTI is a mere instrumentality of Lada.

## JURISDICTION AND VENUE

10. This is a complaint for trademark infringement, trademark dilution, and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended (the "Lanham Act"); for trademark infringement, unfair competition, deceptive acts and practices and trademark dilution under the laws of the State of Illinois; and for breach of contract.

11. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1338(a), and also possesses subject matter jurisdiction under 28 U.S.C. § 1332, as this is an action between citizens of different states and the matter in controversy exceeds, exclusive of interest and costs, the sum or value of seventy-five thousand dollars.

12. This Court has personal jurisdiction over Defendants in that they do business and reside in the State of Illinois and in this District.

13. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in this judicial district, and this is the District in which events giving rise to the claims hereinafter set forth occurred.

## WTCA AND THE WTCA MARKS

14. WTCA was founded in 1969 following the establishment of the World Trade Center facility located in New York City. WTCA is a not-for-profit membership association dedicated to the establishment and effective operation of World Trade Centers ("WTCs") as instruments for trade expansion. It represents more than 300 members in over 90 countries, including more than 45 members located in the U.S.

15. The WTCA Marks have been used continuously for more than forty years to designate the services of the WTCA and have enabled the WTCA to achieve world-wide notoriety in the international business and real estate development and management community, as well as among the public at large. As a consequence, the WTCA Marks engender an enormous amount of goodwill and are distinctive and famous symbols of such goodwill that belong exclusively to the WTCA.

16. Over the last ten years, WTCA has spent an average of $1.95 million per year for advertising, promoting and rendering services under the WTCA Marks on an international scale. Among the methods used to promote the WTCA Marks have been conferences, seminars, trade shows and digital media.

17. WTCA licenses the WTCA Marks to its members, who pay an initiation fee of $200,000 and annual dues of $10,000. WTCA members offer various trade-related services to the public under the WTCA Marks. In addition, WTCA members also spend millions of dollars each year advertising and promoting their own trade-related services offered under the WTCA Marks, which use inures to WTCA's benefit and enhances the fame and distinctiveness those Marks possess in the State of Illinois, the U.S. and around the world.

18. The fame and recognition achieved by the WTCA Marks in the State of Illinois and the U.S. is reflected in the numerous examples of unsolicited media coverage of WTCA and the WTCA Marks, as reflected in Exhibit A hereto. In addition, WTCA has won numerous awards and other honors in connection with the association services it offers, as shown in Exhibit B hereto. As a result of the extensive advertising and publicity featuring the WTCA Marks over the decades in which they have been in use, and the exposure of the WTCA Marks to consumers throughout the U.S. in the press and otherwise, the WTC Marks have become famous among the general consuming public of the U.S., including but not limited to the State of Illinois.

19. WTCA is the owner of the entire right, title and interest in and to, *inter alia*, the following federally-registered service marks:

| Mark | Reg. No. | App. Date | Reg. Date | Class |
|---|---|---|---|---|
| WTC | 1749086 | 21 May 1992 | 26 Jan 1993 | 42: association services; namely, fostering and promoting world trade and international business relationships |
| WORLD TRADE CENTER | 1469489 | 26 Sep 1986 | 15 Dec 1987 | 42: association services—namely, fostering and promoting world trade and international business relationships |
| [logo] | 1011720 | 5 Dec 1973 | 27 May 1975 | 42: association services-namely, fostering and promoting world trade and international business relationships. |
| [logo] | 4174948 | 15 Nov 2011 | 17 Jul 2012 | 16: Atlases, globes, binders, cards not magnetically coded for use in business transactions, pens, pencils, dictionaries, membership directories, maps, publications, namely, news bulletins, newsletters, newspapers, brochures, pamphlets and magazines in the fields of business, finance and international trade. |
| [logo] | 4137248 | 16 Nov 2011 | 1 May 2012 | 18: leather binders for travel purposes, wallets including card holders/with card compartments, straps for carrying cases, umbrellas. |

Attached to this complaint as Exhibit C are true and correct copies of printouts from the USPTO website evidencing WTCA's ownership of these registered trademarks. All of the registrations in Exhibit C are valid, subsisting, unrevoked, uncancelled, and incontestable under 15 U.S.C. § 1065. WTCA also owns common law rights in these and other marks for use in connection with various trade-related services.

20. WTCA monitors the use of the WTCA Marks by its members, maintaining quality and consistency in their use of such Marks.

## DEFENDANTS' WRONGFUL CONDUCT

21. On October 10, 2010, Defendants William B. Lada and WTI, through C.H. Johnson Consulting, purchased a one-year option for a WTCA license for the greater Chicago area for $25,000 (the "WTCC Option").

22. On September 23, 2011, Mr. Lada's business associate, Charles H. Johnson, IV, requested in writing a six-month extension of the WTCC Option, which WTCA granted upon payment of a $25,000 option extension fee. Under the terms of an Option Extension Agreement between WTCA and WTI, WTI's option expired on April 10, 2012. The Option Extension Agreement is attached hereto and incorporated herein as Exhibit D.

23. In April 2012, Mr. Johnson and Mr. Lada requested a second six-month extension of the WTCC Option, which was denied by the WTCA Board at its April 18, 2012 meeting in San Diego, California, due to a failure to timely submit the $35,000 option extension fee.

24. On April 26, 2012, WTCA sent a letter addressed to both Mr. Lada and Mr. Johnson as then-representatives of "World Trade Illinois" reiterating WTCA's refusal of the option extension and demanding that they and WTI cease: a) all use of the WTCA Marks; b) all use of any company name, domain name, or email address that incorporates any of the WTCA Marks; and c) engaging in any acts or making any representations that suggest or imply their membership in, or any affiliation with, the WTCA. That letter is attached hereto and incorporated herein as Exhibit E.

25. WTCA reiterated its demands in subsequent email communications in October and November 2012, copies of which are attached hereto and incorporated herein as Exhibit F. Despite WTCA's demands, Defendants continued to use the WTCA Marks.

26. On October 4, 2012, WTCA received an email from Mr. Johnson stating that he is no longer affiliated with Mr. Lada and that Mr. Johnson had ceased all use of the WTCA Marks. However, no such advisory was received from Defendants.

27. On February 15, 2013, WTCA sent another demand letter to Mr. Lada and a Mr. Frank Martinez regarding breach of the Option Extension Agreement and continued unauthorized use of the WTCA Marks. In particular, this letter described an email solicitation by Defendants to a local Chicago business to join "World Trade Center Chicago-Illinois" for $2,500. A copy of the letter and its exhibits is attached hereto and incorporated herein as Exhibit G.

28. Despite numerous demands for Defendants to cease all use of the WTCA Marks and colorable imitations thereof, Defendants have continued their offending uses and also expanded upon their bad-faith violations of WTCA's valuable trademark rights. In April 2013, Defendants, in an attempt to legitimize their wrongful conduct, applied for a full membership in the WTCA network.

29. On June 20, 2013, WTCA rejected this application for the reasons stated in a letter sent to him on July 31, 2013, which is attached hereto and incorporated herein as Exhibit H. In particular, the letter referenced the incomplete status of Mr. Lada's application, the failure to remit the $200,000 initiation fee, and his and WTI's continued unauthorized use of the WTCA Marks. However, thereafter, Defendants' unauthorized uses continued.

30. On November 6, 2013, WTCA met with several WTCA members to discuss their formation of a "WTC Mississippi River Alliance." According to these members, Defendants are an active group in the alliance and are holding themselves out to be a WTCA member.

Defendants are listed as a member on the WTC Mississippi River Alliance website, a copy of which is attached hereto and incorporated herein as Exhibit I.

31. Upon information and belief, on or about February 14, 2014, Defendant Lada contacted the U.S. Embassy in Panama, presenting himself as a representative of the "World Trade Center Chicago" and seeking the Embassy's assistance in arranging a business meeting with WTCA's Panamanian licensee.

32. Upon information and belief, on or about May 21, 2014, Defendant WTI, using the email address "wtcil.org," contacted WTCA's member, World Trade Center San Francisco, in an attempt to establish a business relationship and thereby confusing that member as to Defendants' relationship with WTCA. A copy this email is attached hereto and incorporated herein as Exhibit J.

33. Defendants continue to display the WTCA Marks on the "Events" page of the website located at wtcil.org, a copy of which is attached hereto and incorporated herein as Exhibit K. On Facebook, Defendant Lada continues to describe himself as "President of World Trade Center – Illinois," as shown in Exhibit L, and his Linked In profile also states that he is the "President World Trade Center Illinois," as shown in Exhibit M. On Twitter, as shown in Exhibit N, Defendants are using the confusingly similar handle "World Trade Illinois@WTC_Chicago."

34. As if all of these continued, unauthorized uses of the WTCA Marks were not enough, Defendants have expanded their pattern of misconduct by setting up the "African World Trade Center Institute" that is being promoted through the website accessible at www.awtci.org, excerpts from which are attached as Exhibit O. The unauthorized uses there of the WTCA Marks, and all of the other uses of such Marks described herein, are likely to and already have

confused consumers and members of the trade, and are likely to and already have diluted the distinctive quality of the WTCA Marks.

35. In light of Defendants' persistent refusal to halt the above-described bad-faith conduct, WTCA has no alternative other than to seek the relief set forth below.

FIRST CAUSE OF ACTION

FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

36. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 35 above as though fully set forth herein.

37. WTCA's federal registrations on the Principal Register for the WTCA Marks are conclusive evidence of WTCA's exclusive right to use these Marks under 15 U.S.C. § 1115. Further, the registrations for the WTCA Marks are incontestable, which provides conclusive evidence of their validity, WTCA's ownership of the Marks and WTCA's exclusive right to use the Marks in commerce in connection with the services specified in the certificates of registration, as provided in 15 U.S.C. § 1115(b).

38. Defendants' unauthorized use of the WTCA Marks has caused, and is likely to continue to cause, confusion among the trade and public.

39. Defendants' actions constitute trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. As a proximate result of Defendants' actions, WTCA has suffered and will continue to suffer great damage to its business, goodwill, reputation, and the strength of its trademarks. The injury to WTCA is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate WTCA for its injuries and WTCA lacks an adequate remedy at law.

41. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

42. WTCA is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

SECOND CAUSE OF ACTION

FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND PASSING OFF

43. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 42 above as though fully set forth herein.

44. The WTCA Marks, as used by WTCA and its licensees in connection with providing various services promoting international business and trade, are famous and distinctive marks that have become associated with WTCA and thus exclusively identify WTCA's association, members and services.

45. Because of Defendants' unauthorized use of the WTCA Marks, the public is being and has been deceived and led to believe that Defendants are a member of WTCA, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. The foregoing acts and conduct by Defendants constitute false designation of origin, passing off and unfair competition in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47. Defendants' acts, as set forth above, have caused irreparable injury to WTCA's goodwill and reputation. The injury to WTCA is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate WTCA for its injuries and WTCA lacks an adequate remedy at law.

48. WTCA is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

### THIRD CAUSE OF ACTION

### FEDERAL DILUTION OF FAMOUS MARKS

49. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 48 above as though fully set forth herein.

50. The WTCA Marks are famous and distinctive trademarks within the meaning of 15 U.S.C. § 1125(c), both in Illinois and in the U.S. as a whole.

51. WTCA has no control over the quality of Defendants' web sites, places of business, advertising and other promotional materials, or their use of the WTCA Marks. As a result of such use by Defendants, the distinctive qualities of the WTCA Marks are being and will continue to be diluted.

52. Defendants' operation of various Internet websites and their use and dissemination of materials bearing the WTCA Marks is and will continue to result in the dilution of the distinctive nature of the WTCA Marks through blurring, in violation of 15 U.S.C. § 1125(c).

53. Defendants' wrongful conduct constitutes a grave threat to the distinctiveness of the WTCA Marks, which WTCA has expended great effort and expense to develop and maintain through strict quality control over its licensees.

54. The distinctive quality of the WTCA Marks is of enormous value, and WTCA is suffering and will continue to suffer irreparable harm and blurring of the WTCA Marks if Defendants' wrongful conduct is allowed to continue.

55. Defendants' wrongful conduct as described herein will likely continue unless enjoined by this Court. WTCA has no adequate remedy at law.

56. WTCA is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

FOURTH CAUSE OF ACTION

COMMON LAW TRADEMARK INFRINGEMENT

57. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 56 above as though fully set forth herein.

58. As a result of WTCA's long term and continuous use of the WTCA Marks in commerce, WTCA has established valuable goodwill in such Marks. As such, the WTCA Marks have become uniquely associated with services provided by WTCA and its members and have come to symbolize the reputation of quality and excellence of the WTCA network.

59. Defendants' unauthorized, bad-faith use of the WTCA Marks is likely to and does permit Defendants to pass off their infringing organization to the public as an authorized World Trade Center facility, to the detriment of WTCA and the unjust enrichment of Defendants. Such acts by Defendants have caused and will continue to cause confusion as to the source and sponsorship of their organization.

60. Defendants' acts constitute willful infringement of WTCA's exclusive rights in the WTCA Marks, in violation of state common law.

61. As a direct and proximate result of Defendants' conduct, WTCA has suffered damage to its valuable trademarks in an amount to be ascertained at trial.

62. WTCA does not have an adequate remedy at law, and will continue to be damaged by Defendants' unauthorized use of the WTCA Marks unless this Court enjoins Defendants from such fraudulent business practices.

## FIFTH CAUSE OF ACTION

### DECEPTIVE TRADE PRACTICES

63. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 62 above as though fully set forth herein.

64. As a result of WTCA's long term and continuous use of the WTCA Marks in commerce, WTCA has established valuable goodwill in such Marks. As such, the WTCA Marks have become uniquely associated with services provided by WTCA and its members and have come to symbolize the reputation of quality and excellence of the WTCA network.

65. Defendants' unauthorized, bad-faith use of the WTCA Marks is likely to and does permit Defendants to pass off their infringing organization to the public as an authorized World Trade Center facility, to the detriment of WTCA and the unjust enrichment of Defendants. Such acts by Defendants have caused and will continue to cause confusion as to the source and sponsorship of their organization.

66. Defendants' acts constitute deceptive trade practices, in violation of 815 ILCS 510/1 *et seq.*

67. WTCA does not have an adequate remedy at law, and will continue to be damaged by Defendants' unauthorized use of the WTCA Marks unless this Court enjoins Defendants from such fraudulent business practices.

SIXTH CAUSE OF ACTION

COMMON LAW UNFAIR COMPETITION

68. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 67 above as though fully set forth herein.

69. As a result of WTCA's long term and continuous use of the WTCA Marks in commerce, WTCA has established valuable goodwill in the WTCA Marks. As such, the WTCA Marks have become uniquely associated with the services provided by WTCA and its members and have come to symbolize the reputation of quality and excellence of the WTCA network.

70. Defendants, with full knowledge of the fame of the WTCA Marks, and by reason of same, intended to and did trade in bad faith on the goodwill associated with the WTCA Marks.

71. Defendants' acts have misled and continue to mislead and deceive the public as to its membership in the WTCA network, falsely suggesting a connection with WTCA. Therefore, Defendants have committed unfair competition in violation of state common law.

72. As a direct and proximate result of Defendants' conduct, WTCA has suffered damage to its valuable trademarks in an amount to be ascertained at trial.

73. WTCA does not have an adequate remedy at law, and will continue to be damaged by Defendants' unauthorized use of the WTCA Marks unless this Court enjoins Defendants from such fraudulent business practices.

SEVENTH CAUSE OF ACTION

STATE DILUTION OF FAMOUS MARKS

74. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 73 above as though fully set forth herein.

75. The WTCA Marks are famous and distinctive trademarks within the meaning of 765 ILCS 1036/5(c) and 65.

76. WTCA has no control over the quality of Defendants' web sites, places of business, advertising and other promotional materials, or their use of the WTCA Marks. As a result of such use by Defendants, the distinctive qualities of the WTCA Marks are being and will continue to be diluted.

77. Defendants' operation of various Internet websites and their use and dissemination of materials bearing the WTCA Marks has caused and will continue to cause dilution of the distinctive nature of the WTCA Marks through blurring, in violation of 765 ILCS 1036/5(c) and 65.

78. Defendants' wrongful conduct constitutes a grave threat to the distinctiveness of the WTCA Marks, which WTCA has expended great effort and expense to develop and maintain through strict quality control over its licensees.

79. The distinctive quality of the WTCA Marks is of enormous value, and WTCA is suffering and will continue to suffer irreparable harm and blurring of the WTCA Marks if Defendants' wrongful conduct is allowed to continue.

80. Defendants' wrongful conduct as described herein will likely continue unless enjoined by this Court. WTCA has no adequate remedy at law.

81. WTCA is entitled to a permanent injunction against Defendants, as well as all other remedies available under 765 ILCS 1036/65 in light of Defendants' willful conduct, including but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

## EIGHTH CAUSE OF ACTION

## BREACH OF CONTRACT

82. WTCA realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 81 above as though fully set forth herein.

83. WTCA and Defendants were parties to the Option Extension Agreement.

84. WTCA performed all of its obligations under the Option Extension Agreement.

85. Defendants have breached their obligations under the Option Extension Agreement by continuing to use the WTCA Marks and confusingly similar variations thereof.

86. Defendants' breach of the contractual obligations they owe to WTCA under the Option Extension Agreement have caused damage to WTCA and have unjustly enriched Defendants in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, WTCA respectfully requests entry of judgment in its favor and against Defendants on all of the above causes of action as follows:

1. That this Court preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, attorneys and all persons in active concert or participation with them, or any of them:

   a. From using in any manner the WTCA Marks, or any other designation that is confusingly similar to the WTCA Marks, so as to be likely to cause confusion, deception or mistake in connection with the offering of trade and business related services, or to dilute the distinctive quality of the WTCA Marks;

      b.     From committing any acts calculated to cause the trade or public to believe that Defendants are the same as or sponsored or approved by, or connected with, or endorsed by Plaintiff;

      c.     From further diluting the WTCA Marks, and damaging Plaintiff's goodwill; and

      d.     From otherwise competing unfairly with Plaintiff in any manner.

2.     That this Court direct Defendants to deliver up to Plaintiff for destruction or other disposition, within thirty (30) days of the entry of final judgment herein, any and all labels, signs, prints, packaging, wrappers, bottles, receptacles and advertising or promotional materials in their possession or within their custody or control that bear any designation in violation of Plaintiff's rights as decreed herein, together with all plates, molds, matrices and other means of making the same.

3.     That this Court direct Defendants to file with the Court and serve on counsel for Plaintiff, within thirty days after entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116.

4.     That this Court direct Defendants to account to Plaintiff for their profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a) and Plaintiff's claims for common law trademark infringement and unfair competition.

5.     That this Court award Plaintiff its actual damages incurred as a consequence of Defendants' wrongful conduct as described herein, trebled pursuant to 15 U.S.C. § 1117(a).

6.     That this Court award Plaintiff damages on its claim for breach of contract.

7.     That this Court award Plaintiff punitive damages on its claims for common law trademark infringement and unfair competition.

8. That this Court award Plaintiff its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117 and 815 ILCS 510/1 *et seq*.

9. That this Court award Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff World Trade Centers Association, Inc. demands a trial by jury on all issues and claims so triable.

Dated: August 13, 2014

Respectfully submitted,

WORLD TRADE CENTERS ASSOCIATION, INC.

_____/s/ Steven J. Yatvin_____
One of Its Attorneys

Steven J. Yatvin
Matthew F. Singer
Barack Ferrazzano
 Kirschbaum & Nagelberg LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
(312) 984-3150 (facsimile)
steven.yatvin@bfkn.com
matthew.singer@bfkn.com

Bruce R. Ewing (*pro hac vice* to be filed)
DORSEY & WHITNEY
51 West 52nd Street
New York, New York 10019-6119
(212) 415-9206
(212) 953-7201 (facsimile)
ewing.bruce@dorsey.com